And we'll hear Joseph Byrne versus Nancy Barahill et al. Good morning, Your Honors. I may please the court. My name is Christopher Bowes. I'm the attorney for the Plaintiff Appellant Joseph Byrne. And this is a Social Security Appeal in which we're challenging the Administrative Law Judge's assignment of limited weight to what is an extraordinarily detailed and well-supported opinion by his board-certified treating orthopedist, Dr. Mitchell Goldstein. Dr. Goldstein provided a multi-page narrative opinion explaining why he reached the conclusions that he reached, where he discusses the treatment that he provided, the x-rays and the MRI evidence that he procured to better understand Mr. Byrne's predicament, and the reasons why he felt he was limited in his ability to sit, stand, and walk. And that opinion is set forth in the record. And there's a separate opinion at page 303, 304 by Dr. Goldstein as well, which specifically narrows down the amount of standing and walking, less than two hours of standing and walking in an eight-hour day. That's the critical evidence in this case. There were also two other treating physicians that essentially supported what Dr. Goldstein said. Absolutely. Dr. Vlatis is a rehabilitation specialist, and Dr. Hearn, Michael Hearn, is also a rehabilitation specialist who were also treating him around the same time and reached very similar conclusions about Mr. Hearn's ability to stand and walk. The administrative law judge discounted on his own the Dr. Goldstein's opinion and Dr. Vlatis's opinion based on his determination that he felt the diagnostic tests, he discusses the MRIs and the x-rays, but he felt that those tests did not support Dr. Goldstein's findings. He later on goes on to state that he's giving great weight to the opinion of a one-time consultative physician. Now this is unusual in this case because the consultative physician's examination occurs after the administrative law judge hearing. The administrative law judge realizes he doesn't have any evidence other than treating source evidence. So he does two things. He obtains a report from a consultative physician, Dr. Jerome Chiotti, and also... That's the internist, right? That's the internist, not the orthopedist, although the judge in his decision does call him an orthopedist. Apparently, he noticed that. He does send interrogatories to a retired board-certified orthopedist, Dr. Louis Fuchs, who responds to the judge's questions in a format that tells us that he reviewed the record because he cites two different tests within the record. Am I right that there is no evidence that Dr. Chiotti had the full records, Dr. Fuchs did have the full records? We know that the judge sends a letter to Dr. Fuchs saying, here's a copy of the whole file. Please complete this interrogatory. There's no similar letter to the internist, Dr. Chiotti. There's no requirement in our cases that the full record be sent. Obviously, depending on whether it is or not, the amount of weight will... That's our argument in a nutshell. If there is a requirement, and I think the Sixth Circuit in the Brantley case seems to give all relevant evidence to the individual who's reviewing the file. It only makes sense, right? Our belief is that Dr. Chiotti did not review any of the X-rays of the knees, of the MRIs of the knees, and that without that... Dr. Fuchs, who did, sent in a report which is at best ambiguous because he said some of it doesn't support what Dr. Goldstein said, did he not? Yeah. Our position is that Dr. Fuchs' opinion with respect to standing and walking, not only that it doesn't support an RFC, residual functional capacity, for lightweight, because lightweight requires six hours of standing and walking, Dr. Fuchs' opinion is also more consistent with Dr. Goldstein's opinion, who said he can stand and walk for less than two hours in an eight-hour day, than it is with Dr. Chiotti, who said that, I think the standing and walk, he says standing and walking are unrestricted in his narrative opinion. And in the, he does complete a checkoff part... He says eight hours workday sitting, eight hours workday stand. Yeah. And he's basically unrestricted with respect to standing and walking. And it's our position that the way to understand Dr. Chiotti's conclusion is that he didn't have access to the objective MRI and X-ray results that all of the other doctors in the record did and arrived at a very different conclusion. For him to step away from the treating physicians and to embrace the Dr. Chiotti's view, he has to show that for some reason Goldstein and Vladis' analysis is somehow not supported by the results of the, the objective results of the diagnostic procedures that were done. This isn't like where they're measuring nerve conduction studies or stuff, so you don't know that. These are interpretations of MRIs and X-rays, right? That's correct. But he doesn't, he doesn't say his, his reason for rejecting Goldstein is because Goldstein suggested a conservative treatment and that, and that your client improved to some degree or, or seemed to benefit from conservative treatment. I don't think the treatment was conservative, Dr. Goldstein was... I'm saying, I'm characterizing it as the, how the, the Dr. Chiotti characterized. That's right. It's not conservative treatment. And he had ortho-visc injections into the knee, so that, that's correct. There's a vast difference between what Dr. Chiotti is saying and what every other doctor in the file is saying. Including Dr. Fuchs, right? I believe including Dr. Fuchs, because if you can only stand and walk for three hours in an eight hour day, you can't do light work and you can't do... You might not say that they're saying the same thing, but in terms of a reason for ignoring what the treating physician said, it doesn't seem to stand for anything. That's correct, Your Honor. I believe that's correct. Thank you. I have reserved time for... You have reserved three minutes. Now I'm going to have to ask you to lower that slightly. Thank you. Good morning, Your Honor. Please let me know if you, if you can't hear me. Can you hear me all right? Okay. Good morning, Your Honor. My name is Dara Olds. I'm an assistant United States attorney in the Eastern District of New York, appearing on behalf of the commissioner of the Social Security Administration. In this case, the administrative law judge determined that Mr. Byrne retained the ability to perform a restricted range of light work. And actually that opinion was based on, in part, Dr. Fuchs' interpretation of the diagnostic tests. Dr. Fuchs says that he could only stand or walk for three hours and so on. So that even if we buy that, and we don't really need to buy it because you can only overcome a treating physician if the treating physician hasn't based his, her judgment on examine, you know, on data, while this one has. What evidence is there, what evidence in this case is there that the treating physicians, all three of them, didn't base their conclusion on what the examinations and the tests showed? This was essentially Judge Wesley's question. Well, Your Honor, I think that the ALJ's job is to determine, is to, to resolve the conflict in the record. No. The conflict is... Under our cases, the ALJ's job is to follow the treating physicians unless there is good reason for not following. And we have specified what good reasons are, among them that the treating physician is not based in his or her judgment on specific tests. Correct. Correct. And Your Honor is, is correct to point out those tests because those tests are actually interpreted differently by Dr. Fuchs than they are by the treating physicians. Dr. Fuchs specifically notes that those diagnostic tests on which plaintiff strongly relies show only limited, only mild limitations in the plaintiff's functioning. So that the conflict is not so much just the opinions of the treating physicians, but also what exactly the diagnostic tests show. And for example, the right ankle x-ray shows a healed fracture with the screw backing out. But even Dr. Zaret's examination of the plaintiff with respect to the right ankle, who's one of plaintiff's treating physicians, found that there was no instability with respect to that ankle and the tenderness, there was slight tenderness over the space of the screw. Further, the lumbar spine x-rays and the pelvis and hip, hip arthrogram x-rays, while they show some degenerative changes, uh, the ALJ found that... But on the basis of what did the ALJ find that? Because if the ALJ found it on the basis of his own judgment, then that's error because he isn't a doctor. Agreed, Your Honor. Now, did he find it on the basis of what Dr. Coyote said? No, Your Honor. He found it. Dr. Fuchs is the one who examined all of the diagnostic tests, plaintiff. And Dr. Fuchs is the one who came to the conclusion that those tests showed only mild limitations with respect to plaintiff's mobility and motion. The diagnostic tests themselves showed only mild limitations. And that opinion was of Dr. Fuchs, who was an orthopedist, just like Dr. Goldstein is an orthopedist. It's interesting that the ALJ, uh, relied primarily, uh, on, uh, Dr. Coyote. That's what he said was the reason for under, uh, uh, for ignoring the treating physician, this non-orthopod whom he calls an orthopod, and who didn't have, as you just told us, the whole record. Well, actually, Your Honor, the ALJ states that he, the reason why he, he assigns limited weight to the treating physicians is because of their conflict, a conflict between their opinion and what the diagnostic test shows. And he knows what those diagnostic tests show because he asked Dr. Fuchs, who reviewed all of them, as well as all of the examinations. Are you reading from what part of the ALJ's decision? I'm reading, um, from page 56 of the record, where Dr. Fuchs, where, where the ALJ summarizes Dr. Fuchs's opinion, and also, um, on page 55, where he talks about, um, on page 55 of the record, where he, where he talks about how the degenerative, the degenerative changes that are shown in the diagnostic tests, and Dr. Hearn's opinion in particular is unsupported by the diagnostic testing, as well as Dr. Goldstein's opinion is unsupported by the diagnostic testing. That's on page 55 of the record. But even if, even if we assume that Dr. Fuchs's analysis of the tests is in sufficient contradiction to the treating physicians, so that, that is not a complete thing, what is there that to ignore the treating physicians, rather than his own judgment of what this person can do? Because what you have is Dr. Fuchs coming out with something that also says that this isn't, this person isn't capable of doing light work. Well, I think with respect to Dr. Fuchs's opinion, he is asked separately whether the plaintiff can stand, and for how long, and whether he can walk, and for how long, and he checks that each of those are three hours. And the ALJ, in his hypothetical to the vocational expert, asks about jobs where somebody could stand and or walk for a six-hour period. And so, I think because Dr. Fuchs has asked those questions separately, about how long the plaintiff can stand and how long the plaintiff can walk, that that assessment, that he can walk for three hours and he can stand for three hours, is in fact consistent with the ALJ's determination that the plaintiff is able to perform light work. I hear you, but I can't quite follow you. If this person can only stand for three hours and only walk for three hours, and light work requires at least six hours, how does he, where do you make the jump? You're adding two things, as if Dr. Fuchs had said, oh, let him sit for three hours and then walk for three hours. Well, in fact, Your Honor, Dr. Fuchs was asked those questions separately in an eight-hour day for how long can the plaintiff stand, and in an eight-hour day for how long can the plaintiff walk. So, I think for the plaintiff to assume that he meant that that was three hours in total rather than standing for three hours and walking for three hours, I think is not. If you look at this whole case, it really looks more than almost any case I've seen where there is really no traversing of what the treating physician said by any other physician who, with the record and qualified, has said this is wrong, and that's unusual in a case of this sort. I mean, it's rather dramatic. I went back to the page that you, pages you asked me to take a look at, and the ALJ repeatedly uses this phrase, less weight is given to this assessment and it is unsupported by the diagnostic testing, and as the ultimate issue of inability to work is a decision reserved for the commissioner. That's 54. And then he talks about Dr. Goldstein, less weight is given to the opinion and unsupported diagnostic testing as the ultimate issue of inability to work is a decision reserved to the commissioner. He doesn't cross-reference it to something that Fuchs said, and in fact, when he does discuss Dr. Fuchs, he doesn't say how Dr. Fuchs says that Goldstein and the other treating physicians have rendered inappropriate conclusions. He just says what Dr. Fuchs says in terms of this fellow's ability to work. The medical expert assessed that an eight-hour workday, the claimant can sit for eight hours, stand, backslash, walk for three hours, not stand for three hours and walk for three hours, not six hours, this is the ALJ's finding now, and lift and carry 20 pounds frequently. How are we to know how the ALJ figured out that less weight is given the opinion because it's unsupported by diagnostic testing? What does he tell us? What does he tell us where the inconsistency is between these descriptions of MRIs and if you ever had an MRI and they tell you, oh, there's a narrowing at C4, C5, and you say, okay, great, I can't even tell you where C4, C5 is, but these orthopods, they understand this, they speak that language, but the ALJ is not an orthopod, and how does he get the between what Dr. Goldstein sees on an MRI and the conclusions that he makes about what the applicant can or cannot do? I think we know that based on what Dr. Fuchs sees when he looks at the MRI, which is on But he doesn't say that. He doesn't say less weight is given the opinion because it's inconsistent with Dr. Fuchs' interpretation of the MRI, and I give Dr. Fuchs more weight, he doesn't tell us that. How are we to understand why he rejected Dr. Goldstein? I'm not picking on you, except the fact that you happen to be there for the government, so but don't go, okay, that's just what you wanted to do with your life, and I'm good for you. And I'm happy to hear you on it. No, no, I mean that sincerely, but the point is is that if the treating physician rule is always where the action is on these, right? I mean, always the action is, and the ALJ says, look, the treating physician didn't really look at the nerve conduction studies, didn't really examine that. The treating physician never did test A, B, C, and D, and so therefore the treating physicians, all the treating physician relied upon was subjective complaints of pain. We see this all the time in these, and the ALJ says, no, you know, disconnected from any kind of objective observations, and that's generally pointed out by the physician that reviews the file, and we always say, well, that's a legitimate reason why you can have a doctor look at the file and not have been the treating physician and reject it. But we've got nothing, this is just an ALJ. This guy's not a doc, or lady's not a doc, whoever. It's a gentleman, sir. So what, where do I figure out where the beef is here? Your Honor, respectfully, I think that while the ALJ didn't phrase it exactly as you've said, the record clearly states that Dr. Fuchs, in reviewing the diagnostic tests, came to the conclusion that they show mild limitations in motions, and that's within the record on page 400. And the ALJ relies on Dr. Fuchs and assigns his opinion significant weight. And so I think it's clear that he does that. So if we conclude that based upon his reliance on Fuchs's conclusions, does Fuchs refute his ability to draw, to be eligible for disability? Yes, Your Honor. Okay, that's all I want to know. Thank you. Thank you. Thank you. Gave you a hard time, you did a nice job, thank you. Thank you, Your Honor. Staying on Dr. Fuchs's opinion for a moment, the administrative law judge correctly interpreted Dr. Fuchs's opinion to mean that in an eight-hour day, Mr. Byrne could stand and walk a total of three hours, not stand for three hours and then walk three hours on top of that. Second Circuit case law in Vargas v. Sullivan from many years ago establishes that principle. You have to, in order to be walking, you need to be in an upright standing position. So doc judge, administrative law judge Kilgannon correctly interpreted Dr. Fuchs's opinion. And only if we accept the opinion advanced in litigation by the commissioner in this case that Dr. Fuchs's opinion could be read to mean that he could stand for three hours and then walk for six hours. Could this Court agree that Dr. Fuchs's opinion would support the light residual functional incapacity that the judge arrived at? How about as it's written in the decision at 55, where he says stand backslash walk? Exactly. That's our — I mean, it's not cumulative. It's not stand for three, walk for three. It's stand backslash walk for three. The combination of standing and walking. Standing and or walking. The last time I walked, I was standing. Three hours. That's correct. And we have read it to mean three hours in Vargas, and the ALJ actually took it as that here. Yeah. I have no quibble with the judge's interpretation of what Dr. Fuchs meant when he completed the forum. Our position is that Dr. Fuchs's opinion is more in line with the treating physician's opinion in that he cannot do light work. But our opposing counsel suggests that the ALJ really relied on Dr. Fuchs's reading of the MRIs differently from the treating physicians. Now, it is possible to say that Dr. Fuchs did that. Did the ALJ in fact rely on that? I believe with Judge Wesley that that would be a tortured interpretation of what Judge Kilgannon actually said in his opinion. He repeatedly says — talks about the treating physician evidence and says I'm not — I'm giving this less weight because it's not consistent with the diagnostic test. It's the judge, administrative law judge, who's doing the determination about whether or not the diagnostic test support the treating physicians. Well, it would have been a lot better. Of course, he didn't have the one reviewing physician yet because it hadn't been done when he was taking the original proof and stuff. It would have been a lot better if he'd said great weight is given to those opinions based on a complete evaluation history and is inconsistent with the diagnostic provisions as indicated in Dr. Chiodi's report for the following reasons. It's hard for — it's very hard to figure out whether he just decided it was inconsistent or it was inconsistent with Chiodi's overall evaluation. And as this Court has repeatedly said, the Court, in order to review the case, must know what the adjudicator is meaning in their decision. It should be clear. You shouldn't have to reach too far into this to come up with alternative explanations. If the Court is satisfied that the administrative law judge failed to follow the treating physician rule and that the treating physician's opinions are extraordinarily detailed and well-supported, the proper remedy in this case is to vacate and remand for calculation of benefits payable to Mr. Byrne because the opinion of the day we'd be left with is Dr. Goldstein's, which is inconsistent with the ability to do light work but also sedentary work. Thank you. Thank you both. Well argued by both sides. It was a reserved decision.